UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC SMITH and LEANNA SMITH,

                Plaintiffs,                        Case No. 1:12-cv-296

v.                                           HON. JANET T. NEFF

BANK OF AMERICA, N.A. et al.,

                Defendants.

_____/

**OPINION**

Plaintiffs filed this case alleging various causes of action against Defendants following the foreclosure and sheriff's sale of their home, alleging that Defendants wrongfully rejected Plaintiffs' modified loan payments and wrongfully assessed escrow charges for hazard insurance on their home.  Pending before the Court is Defendants' Motion to Dismiss the sole remaining claim, Count I of Plaintiffs' First Amended Complaint (FAC), for breach of contract (Dkt 62).  Plaintiffs have filed a Response (Dkt 64), and Defendants have filed a Reply (Dkt 65).  Having fully considered the parties' briefs, accompanying exhibits, and the record, the Court concludes that oral argument is unnecessary to resolve the pending motion.  *See* W.D. Mich. LCivR 7.2(d).  The Court grants Defendants' Motion to Dismiss.

## I.  Facts

On February 27, 2007, Plaintiffs entered into a mortgage loan transaction (the "Loan") with Countrywide Bank, N.A., in which Mr. Smith executed a note (the "2007 Note") in the amount of $177,600 (Joint Statement of Material Facts (JSMF), Dkt 66 ¶ 1).  Mr. and Mrs. Smith also executed a mortgage (the "Mortgage") on the property at issue (the "Property") (*id.*).  The 2007 Note stated:

"I will make my monthly payments at P.O. Box 660604, Dallas, TX 75266-0694 or at a different place if required by the Note Holder" (*id.* ¶ 2).  The Mortgage provided for the payment of insurance premiums through an escrow account (*id.* ¶ 4), and further provided: "If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense" and that such amounts disbursed shall become additional debt of the Borrower (*id.* ¶ 5).

In December 2007, Plaintiffs filed for Chapter 7 bankruptcy relief (JSMF ¶ 6).  Mr. Smith subsequently sought to reaffirm his home loan obligations with Defendant Bank of America, N.A. (BANA), the successor-by-merger to the Loan's servicer in 2009, and on August 7, 2009, Mr. Smith signed a Loan Modification Agreement (*id.* ¶ 8).  The Modification became effective on December 29, 2009 with the payment obligations to resume in January 2010 (*id.*).  Pursuant to the Modification, Mr. Smith would pay only monthly interest on the unpaid principal balance until August 2014, at which time he was to make monthly payments of principal and interest (*id.* ¶ 9). In a Step Rate Loan Modification Addendum also signed on August 7, 2009 (the "Addendum"), the parties agreed this initial monthly interest payment was to be $799.38 (*id.* ¶ 10).  The Modification Agreement provided in relevant part that the Borrower would comply with the requirements of the Mortgage, including the payment of insurance premiums (*id.* ¶ 11), and all other terms and provisions except as amended by the Modification Agreement (*id.* ¶ 12).

When BANA sent the Modification Agreement and Addendum to Mr. Smith on August 4, 2009, it included a cover letter, which stated:

> Your new modified monthly payment will be $1,134.39, effective with your September 1, 2009 payment.  This payment is subject to change if your escrow account is reanalyzed or if you have a step rate or adjustable rate loan type.

* * *

A breakdown of your payment is as follows:

Interest Payment: $799.38

Escrow/Option ins: $335.01

Total Payment: $1,134.39

(JSMF ¶ 14).  The cover letter was the only document in the mailed package of August 4, 2009 that identified a dollar amount earmarked for escrow (*id.* ¶ 15).  Paragraph 3 of the Modification Agreement specified:  "The Borrower will make such payments at 400 Countrywide Way, Simi Valley, CA 93065 or at such other place as the Lender may require" (*id.* ¶ 17).

BANA subsequently foreclosed on the Property, and it was sold at a sheriff's sale on August 24, 2011 to Defendant US Bank for $235,480.61 (JSMF ¶¶ 18-19).  Plaintiffs had the right to redeem the Property by February 24, 2012 (*id.* ¶ 20).  On the day before the redemption period expired, Plaintiffs filed a lawsuit in the Kent County, Michigan, Circuit Court and, that same day, the Circuit Court issued an *ex parte* injunctive order stopping the foreclosure process and further disposition of the Property (*id.* ¶¶ 21-22).  Defendants removed the case to this Court and now seek dismissal of the sole remaining claim for breach of contract.[1]

## II.  Legal Standard

Fed. R. Civ. P. 12(b)(6) authorizes the court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]"  In deciding a motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as true.  *Thompson v. Bank of America, N.A.*,

---

[1]Plaintiffs voluntarily dismissed Counts II through IV of their FAC.

773 F.3d 741, 750 (6th Cir. 2014).  "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing FED. R. CIV. P. 10(c)).  The court may also consider documents referred to in the pleadings that are integral to the claims, as well as matters of public record, without converting a motion to dismiss into one for summary judgment.  *Id.* at 336; *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).[2]

To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

### III.  Analysis

In their breach of contract claim, Plaintiffs allege that Defendants owed a contractual duty "to abide by the terms of the [Modification Agreement], specifically, including the terms of accepting timely loan payments" (JSMF ¶ 26, quoting FAC ¶ 28).  Plaintiffs claim Defendants breached this duty "when they failed to notify [Plaintiffs] of the location at which he [sic] was to make those payments" (*id.* ¶ 27, quoting FAC ¶ 29).  Plaintiffs also claim Defendants breached their

---

[2]As requested by the parties, the Court will consider the 2007 Note, Mortgage, Modification Agreement, Addendum and Sheriff's Deed as part of the pleadings for purposes of this Motion (see JSMF at 1 n.1).

contractual duties by "unilaterally changing the amount due by adding hazard insurance to the mortgage," asserting: "This hazard insurance amount was not mentioned in the loan modification agreement" (*id.* ¶ 28, quoting FAC ¶ 29).

Defendants argue that because the terms of the 2007 Note, Mortgage, and Modification Agreement belie Plaintiffs' claims, Defendants are entitled to dismissal of the breach of contract count.  The Court agrees.

A.  Alleged Acceptance-of-Payments Breach

As set forth in the facts above, it is undisputed that the loan documents instructed Plaintiffs where to send payments.  The Modification Agreement directed that payments be sent to 400 Countrywide Way, Simi Valley, CA 93065" (Mod. Ag. ¶ 3).  Plaintiffs did not send any payments to the Simi Valley address listed in the Modification Agreement.[3]  Plaintiffs instead sent payments to the address to which they had been making payments *before* filing for bankruptcy and reaffirming the obligation to BANA, i.e., the post office box in Dallas, Texas (*see* FAC ¶ 17, emphasis added), which Defendants assert was an obsolete address listed in the 2007 Note.  No breach of contract is established on these facts with regard to Defendants' alleged failure to notify Plaintiffs of the loan payment location.  Plaintiffs had express notice of the correct payment address.

Plaintiffs nonetheless assert that "'[e]*very* contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement,'" citing *Flynn v. Korneffel*, 547 N.W.2d 249, 260 n.8 (Mich. 1996) (Levin, J. dissenting), quoting 2 Restatement, Contracts 2d § 205,

---

[3]This address apparently was also provided in monthly statements sent to Plaintiffs, which included a coupon listing a return address.

p. 99 (emphasis in *Flynn*) (Pls.' Resp., Dkt 64 at p. ID# 345).  Plaintiffs also argue a breach of good faith by Defendants.

"Michigan does not recognize an independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing." *Ulrich v. Fed. Land Bank of St. Paul*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1991); *see also Fodale v. Waste Mgmt. of Mich., Inc.*, 718 N.W.2d 827, 841 (Mich. Ct. App. 2006).  However, "[w]here a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith," *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975)" (*see* Pls.' Resp. at p. ID# 345-46).  Plaintiffs argue that because the payment address selection (along with the reservation of identifying another address) rested within the sole discretion of Defendants, Defendants' repeated refusals to accept tender at the previous payment center translates into a breach of its contractual obligation to act in good faith. Plaintiffs allege that they made the first payment of $1,135 in mid-September 2009 to the Texas address, by a personal check made out to Bank of America with the loan number and identifying the real property, and they mailed subsequent checks to the same payment center every month thereafter through October or November 2010.[4]  Plaintiffs state that Defendants' payment processing center did not return, forward or negotiate the checks; nor did Defendants ever communicate to Plaintiffs that payments were expected to be made to a different payment center.  Plaintiffs argue that these facts "make it plausible that Defendant[s] breached their contractual obligation" (Pls.' Resp. at p. ID# 348).

---

[4]The record does not establish how many checks Plaintiffs mailed to the Texas address; regardless, that fact is immaterial to the analysis.

First, Plaintiffs' argument is based on a flawed premise, since the rule governing discretionary performance is not implicated—there is nothing discretionary about the specification of the payment address in the Loan Modification Agreement.  "Where the parties have 'unmistakably expressed their respective rights,' the covenant [of good faith and fair dealing] does not apply."  *Stephenson v. Allstate Ins. Co.*, 141 F. Supp. 2d 784, 790 (E.D. Mich. 2001) (citation omitted).

Moreover, contrary to Plaintiffs' argument, there are no facts showing that Defendants did not act in good faith.  Plaintiffs failed to comply with the Loan Modification's express directive for making payments to the Simi Valley, CA, address.  Nothing establishes that Defendants received the checks from Plaintiffs or acted in any way to hold or dispose of the checks, let alone acted in bad faith.  On a Rule 12(b)(6) motion, the Court is not bound to accept as true "unwarranted" allegations or factual inferences in the complaint, including allegations "contradicted by public records and other evidentiary materials of which the Court may take judicial notice."  *McGee v. City of Cincinnati Police Dep't,* No. 1:06-CV-726, 2007 WL 1169374, at *2 (S.D. Ohio Apr. 18, 2007); s*ee also Moon v. Harrison Piping Supply,* 465 F.3d 719, 728 (6th Cir. 2006) (the court draws all *reasonable inferences* in favor of the nonmoving party (emphasis added)).

Plaintiffs also argue that they have stated a breach of contract based on Defendants' failure to provide a meaningful way for them to make payments on the debt owed, as in *Bilandzija v. Shilts*, 54 N.W.2d 705, 707 (Mich. 1952), and *Birznieks v. Cooper*, 275 N.W.2d 221 (Mich. 1979) (Pls.' Resp. at p. ID# 348).  Plaintiffs assert that over the course of two months, Mr. Smith tried on three separate occasions to make his mortgage payment at a Bank of America branch, and although the

money was accepted,[5] it was never credited as payments to Plaintiffs' account. The Court finds these cases inapposite because here, unlike in those cases, Defendants provided an express mailing address for payments, which Plaintiffs disregarded.

Plaintiffs have failed to state a claim for breach of contract based on Defendants' alleged refusal to accept tender of payment and/or offer Plaintiffs the opportunity to cure any deficiency in the mailings.

## B. Alleged Hazard Insurance Breach

Plaintiffs do not dispute their $1,134.39 monthly payment included both an interest payment and an escrowed amount of $335.01 for taxes and insurance. They contend, however, that they have stated a claim for breach of contract based on Defendants' unilateral increase of the monthly installment amount for additional hazard insurance that was neither contemplated between the parties nor necessary (Pls.' Resp. at p. ID# 350). Plaintiffs assert that there was never a "meeting of the minds" with respect to this added premium (*id.*). Thus, because this unilateral increase was not based on the mutual assent of the parties at the time of the loan modification, it constituted a breach of the agreement. Plaintiffs further argue that even if the cover letter is deemed to be incorporated into the parties' agreement, the provision tacking on an additional premium for hazard insurance was left to Defendants' sole discretion, and Defendants breached their duty of good faith and fair dealing by repeatedly ignoring Plaintiffs' demand that they be credited for payments they were making independently for hazard insurance through State Farm insurance.

---

[5]Despite Plaintiffs' citation to the FAC ¶¶ 18, 28-29 for this statement, these paragraphs do not allege that Bank of America accepted the money on these occasions. Plaintiffs' factual allegations are at times vague and/or inconsistent on the issues presented.

The Court finds Plaintiffs' reasoning flawed.  Plaintiffs' argument is based on their allegation that:

> When the payments were due on the mortgage with BOA on THE HOME following the end of the Plaintiffs' bankruptcy, BOA assigned to the SMITHS a hazard insurance policy and added this policy to the monthly amount due, with commensurate increased [sic] in the total interest charged over the life of the loan, and a higher monthly payment than THE SMITHS had expected to pay. This amount due contradicted the specific language of THE SMITHS' loan modification agreement.

(FAC ¶ 49).  However, as Defendants point out, the loan agreements and associated documents expressly provided for this additional payment amount for hazard insurance on Plaintiffs' home. Section 5 of the Mortgage permitted Defendants to protect their interest in the Property by obtaining hazard insurance at Plaintiffs' expense:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards …. This insurance shall be maintained in the amounts … and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. …

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. …

Such insurance expense would be charged against an escrow account that Plaintiffs were obligated to pay, in addition to their principal and interest payment, under the terms of the Mortgage (Mortgage § 3).  Plaintiffs' obligations for these payments continued pursuant to the Modification Agreement:

> The Borrower also will comply with all other covenants, agreements, and requirements of the [Mortgage], including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the [Mortgage] ....

(Modification Agreement ¶ 5).  The cover letter for the Modification Agreement recognized the separate payment amounts for monthly interest and escrow obligations for taxes and insurance.  The letter also notified Plaintiffs that this monthly payment was subject to change: "This payment is subject to change if your escrow account is reanalyzed …."

Because the loan documents permitted the charge for hazard insurance obtained by Defendants, Plaintiffs fail to state a breach of contract claim.  Likewise, as discussed above with respect to the acceptance of payments, Plaintiffs' claim based on a breach of a duty of good faith and fair dealing also fails because Plaintiffs' obligations for the escrow payment were expressly set forth in the mortgage and associated loan documents.  "Where the parties have 'unmistakably expressed their respective rights,' the covenant [of good faith and fair dealing] does not apply."  *Stephenson*, 141 F. Supp. 2d at 790 (citation omitted).

### C.  Alleged Wrongful Foreclosure

Plaintiffs have failed to state a breach of contract claim or otherwise allege any defects or irregularities that would provide a basis for setting aside the foreclosure and resulting sheriff's sale. This case is properly dismissed.

### IV.  Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt 62) is granted.  The Court's previous order granting injunctive relief (Dkt 11) is dissolved.  An Order and corresponding Judgment will be entered consistent with this Opinion.  *See* FED. R. CIV. P. 58.


Dated: January  30 , 2015                           /s/ Janet T. Neff
                                              JANET T. NEFF
                                              United States District Judge